THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:24-CV-00124-MR

| | |
|---|---|
| CHRISTOPHER BLIZARD, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> COMMISSIONER OF SOCIAL ) <br> SECURITY, ) <br> ) <br> Defendant. ) <br> _____ ) | **MEMORANDUM OF** <br> **DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's appeal of the Commissioner's decision denying his social security benefits. The parties have fully briefed the appeal. [Doc. 3; Doc. 5; Doc. 6].

## I. PROCEDURAL HISTORY

On July 6, 2017, the Plaintiff Christopher Blizard was determined to be disabled under Title II of the Social Security Act ("the Act"), with a disability onset date of June 2, 2017. [Transcript ("T.") at 85]. On February 8, 2022, the Plaintiff was determined to no longer be disabled under the Act. [Id. at 243]. After this determination was upheld on reconsideration, the Plaintiff requested a hearing before an administrative law judge (the "ALJ"). [Id. at 264]. On April 26, 2023, the ALJ issued a written decision affirming that the

Plaintiff was no longer disabled under the Act after February 8, 2022. [Id. at 96]. On March 1, 2024, the Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [Id. at 1].

On April 22, 2024, the Plaintiff filed a Complaint against the Commissioner in this Court. [Doc. 1]. On July 22, 2024, the Plaintiff filed a Memorandum in support of his social security appeal. [Doc. 3]. The Commissioner filed a Brief on August 28, 2024, [Doc. 5], and the Plaintiff filed a Reply on September 11, 2024, [Doc. 6]. The Plaintiff has exhausted all the available administrative remedies, the parties have fully briefed the appeal, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

When reviewing a Social Security Administration disability determination, the Court must uphold the determination "if (1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 94 (4th Cir. 2020). "Substantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 587 U.S. 97, 97 (2019) (internal quotation marks omitted). "In reviewing for substantial

2

evidence, [the Court does] not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for the ALJ's." Arakas, 983 F.3d at 95 (internal quotation marks omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Drumgold v. Comm'r of Soc. Sec., 144 F.4th 596, 605 (4th Cir. 2025) (internal quotation marks omitted).

To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). "Missing analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." Drumgold, 144 F.4th at 605 (internal quotation marks omitted). Thus, it is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). Without this explanation, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Radford, 734 F.3d at 295.

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Act, as relevant here, is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In the initial disability determination, the Commissioner uses a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Arakas, 983 F.3d at 90.

Once a claimant has been granted Social Security disability benefits, the claimant's "continued entitlement to such benefits must be reviewed periodically" to "determine if there has been any medical improvement" such that the claimant is no longer disabled under the Act. 20 C.F.R. § 404.1594(a). A "medical improvement" is "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." Id. § 404.1594(b)(1). "A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." Id. In determining whether the claimant

4

is still disabled, the ALJ must follow an eight-step evaluation process. Id. § 404.1594(f).

At step one, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." Id. § 404.1594(f)(1). If so, the claimant's disability is determined to have ended. Id. If not, the case progresses to step two, where the issue is whether the claimant has one or more impairments or combination of impairments that "meets or equals the severity" of an impairment listed in Appendix 1 of Subpart P of 20 C.F.R. § 404. Id. § 404.1594(f)(2). If so, the claimant's disability is found to continue. Id. If not, the case proceeds to step three, where the issue is whether a "medical improvement" has occurred. Id. § 404.1594(f)(3). If so, the case proceeds to step four. If no medical improvement has occurred, the case skips step four and proceeds to step five.

At step four, the ALJ must determine whether the medical improvement is related to the claimant's ability to work—"i.e., whether or not there has been an increase in the [claimant's] residual functional capacity" ("RFC"). Id. § 404.1594(f)(4). The RFC is an administrative assessment of "the most work-related activity the claimant can do despite all of her medically determinable impairments and the limitations they cause." Arakas, 983 F.3d at 90. "To assess the claimant's Residual Functional Capacity, the ALJ must

5

first identify the claimant's 'functional limitations or restrictions' and assess the claimant's 'ability to do sustained work-related' activities 'on a regular and continuing basis.'" Id. (quoting Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *1 (July 2, 1996)). If the ALJ finds that the medical improvement is related to the claimant's ability to work, the case skips step five and proceeds to step six. Otherwise, the case proceeds to step five.

At step five, the ALJ must determine whether any of the statutory exceptions apply. 20 C.F.R. § 404.1594(f)(5). If none of the exceptions applies, the claimant's disability will be found to continue. Id. If an exception provided in 20 C.F.R. § 404.1594(e) applies, then the disability will be found to have ended. Id. If an exception provided in 20 C.F.R. § 404.1594(d) applies, the case proceeds to step six. Id.

At step six, the ALJ must determine "whether all [the claimant's] current impairments in combination are severe," such that the RFC determined at step four "shows significant limitation of [the claimant's] ability to do basic work activities." Id. § 404.1594(f)(6). If so, the case proceeds to step seven. If not, the claimant's disability has ended.

At step seven, the ALJ determines whether the claimant's RFC allows the claimant to do past relevant work. Id. § 404.1594(f)(7). If the claimant can still perform past relevant work, then the claimant is not disabled. Id.

6

Case 1:24-cv-00124-MR   Document 7   Filed 09/29/25   Page 6 of 17

Otherwise, the case proceeds to step eight, where the ALJ considers whether, in light of the claimant's RFC, age, education, and past work experience, the claimant can perform "other work." Id. § 404.1594(f)(8). If the claimant can do other work, then the disability ends. Id. § 404.1594(f)(8). If the claimant cannot do other work, then the disability continues. Id.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity through the date of the ALJ's decision on April 26, 2023. [T. at 87]. At step two, the ALJ found that the Plaintiff "continued to have the same impairments that he had at the time of" his July 6, 2017, determination of disability, which were "malignant neoplasm of the trachea, bronchus or lung (Stage IV lung cancer), anxiety and obsessive-compulsive disorders." [T 87]. The ALJ next found that, since February 8, 2022, the Plaintiff "has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1." [Id.]. At step three, the ALJ found that a medical improvement had occurred by February 8, 2022 because there had been "a decrease in the medical severity of the impairments." [Id. at 88].

At step four, the ALJ found that the claimant's "medical improvement is related to the ability to work." [Id. at 89]. The ALJ concluded that the Plaintiff has the RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) except that the claimant could lift and carry 10 pounds frequently, and 20 pounds occasionally, sit about 6 hours, and stand and walk for 6 hours in an 8-hour workday, frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds, and avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.

[Id.]. Because the ALJ found at step four that the medical improvement was related to the Plaintiff's ability to work, and also found at step six that the Plaintiff "has continued to have a severe impairment or combination of impairments," the ALJ proceeded to step seven. [Id.].

At step seven, the ALJ found that the Plaintiff was "capable of performing past relevant work," which the ALJ construed as a composite job, combining the roles of an insurance office manager and an underwriter. [Id. at 95-96]. Based on the testimony of the vocational expert, the ALJ also found that, considering the Plaintiff's age, education, work experience, and RFC, the Plaintiff could perform jobs that exist in significant numbers in the national economy, such as mail clerk, cashier, and assembler. [Id. at 95-97]. Because the ALJ found that the Plaintiff could perform his past relevant work

8

or make an adjustment to other work, the ALJ concluded that the Plaintiff's disability, as defined in the Act, ended on February 8, 2022. [Id. at 97].

## V. DISCUSSION[1]

The Plaintiff's assignment of error is that the ALJ erred in her assessment of Dr. Beardsley's medical opinion by improperly requiring objective proof for the Plaintiff's symptoms and incorrectly discounting Dr. Beardsley's opinion based on the Plaintiff's reports of his activities of daily living. [Doc. 3 at 3-7]. The Plaintiff argues that "[t]his error also affected the ALJ's assessment of [the Plaintiff's] subjective complaints." [Id. at 6]. The Plaintiff further contends that the ALJ erred in finding that the Plaintiff could perform his past work by relying on an RFC predicated on discounting Dr. Beardsley's opinion and the Plaintiff's subjective complaints. [Doc. 3 at 7-8].

### 1. The ALJ's Assessment of Dr. Beardsley's Opinion

In 2017, the Social Security regulations changed the weight that ALJs must give to the medical opinions in a claimant's record. "Under the new rule, ALJs must 'not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s).'" Drumgold, 144 F.4th at 604. Instead, ALJs must consider all of the record evidence and evaluate the

---

[1] Rather than set forth the relevant facts in a separate section, the Court has incorporated the relevant facts into its legal analysis.

persuasiveness of the evidence under five factors: "(1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors," including evidence that a medical source has familiarity with other evidence relevant to the claim. Id. (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). However, an ALJ "only needs to say, for each 'medical source' in the record, how each of the first two factors applies—that is, whether that source's conclusions are supportable by medical evidence and consistent with the rest of the record." Id. at 605 (citing § 404.1520c(b)(1), -(2)). "Supportability roughly means the amount of objective medical evidence supporting the medical opinion, and consistency roughly means how well the medical opinion lines up with other material in the record." Id. at 606. The duty of resolving conflicting medical evidence falls on the ALJ, and "[w]hen the ALJ does that by applying the correct factors, [the court] won't Monday-morning-quarterback the decision unless it is exceptionally clear that the ALJ made a mistake." Id. at 605. "Like the ultimate determination that a claimant has or lacks residual functional capacity, [courts] review the subsidiary determination that a medical opinion has or lacks supportability and consistency for substantial evidence." Id. at 606.

Here, the ALJ's assessment of Dr. Beardsley's medical opinion sufficiently discusses the evidence that the ALJ found lacked support and

consistency, and the ALJ builds a logical bridge from that evidence and other record evidence to the conclusion that Dr. Beardsley's opinion deserves "minimal weight." [Id. at 94]. The ALJ observed that, although Dr. Beardsley asserted that his opinion was based on objective medical evidence, he "failed to cite any objective findings" or "objective evidence" that would support his opinion that the Plaintiff faces "stringent exertional and environmental limitations," suffers from "marked fatigue," and would be absent from work four or more times per month. [Id.]. The ALJ also concluded that Dr. Beardsley's opinion was "not consistent with the medical evidence," "treatment records," and other record evidence. [Id.]. By contrast, the ALJ gave greater weight to the other medical opinions in the record based on their greater evidentiary support from the objective medical evidence and their consistency with other record evidence. [Id. at 92-93].

Additionally, the ALJ did not improperly use the Plaintiff's daily activities as the primary evidence in favor of discounting Dr. Beardsley's opinion. In Drumgold, the Fourth Circuit recently affirmed that, "as the Social Security rules explain, 'daily activities' are one of the 'factors relevant to your symptoms . . . which we will consider' when making a residual functional capacity determination." Drumgold, 144 F.4th at 608 (quoting 20 C.F.R. § 404.1529(c)(3)). ALJs cannot merely "extrapolate from daily activities to

11

functional capacity" or use information about daily activities as the "primary evidence" an ALJ "relie[s] on to discount the only independent examination report" in the record.  Id.  However, where an ALJ has "properly discounted one medical opinion based on others," the ALJ may reach "a capacity determination based on the whole mix of record evidence," including evidence of daily activities.  Id.

Here, that is precisely what the ALJ did.  After concluding that Dr. Beardsley's opinion was insufficiently supported by objective medical evidence and inconsistent with the record evidence, the ALJ "[a]dditionally" noted that the limitations asserted by Dr. Beardsley were "also in direct contrast to the claimant's own reports of his actual daily functioning."  [Id. at 94].  The ALJ relied on the Plaintiff's reports of daily activities as supplementary, rather than primary, evidence, and the ALJ principally determined that Dr. Beardsley's opinion lacked persuasiveness in light of the other evidence and medical opinions in the record.  [Id.].

The Plaintiff relies heavily on Arakas for his argument that the ALJ erred in the assessment of Dr. Beardsley's opinion.  [Doc. 3 at 3-7; Doc. 6 at 2].  In particular, the Plaintiff points to the principles from Arakas that (1) "disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms," [Doc.

3 at 4 (quoting Arakas, 983 F.3d at 98)], and (2) "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence," [Doc. 6 at 2 (quoting Arakas, 983 F.3d at 97)]. The claim at issue in Arakas, however, predated the 2017 change in the Social Security regulations. Arakas, 983 F.3d at 89. As a result, Arakas, unlike Drumgold, does not apply the five factors from 20 C.F.R. § 404.1520c(c) that control an ALJ's consideration of medical opinions. Under those factors, an ALJ's determination of a medical opinion's persuasiveness must rely in part on the relevant "objective medical evidence." § 404.1520c(c)(1). Accordingly, the ALJ in the instant matter was not only warranted in considering such evidence to determine the persuasiveness of Dr. Beardsley's opinion, but the ALJ was required to do so.

The ALJ applied thus applied the correct legal standards in assessing the persuasiveness of Dr. Beardsley's opinion based on the relevant objective medical evidence supporting the opinion and the consistency of the opinion with the record evidence in full. 20 C.F.R. § 404.1520c(c)(1)-(2). Moreover, substantial evidence—MRIs, CT scans, physical examination records, medical opinions, evidence of daily activities—supports the ALJ's

13

resolution of the conflicting medical opinions in favor of finding that the Plaintiff's disability has ended. On review of the ALJ's decision, the Court refrains from reweighing that evidence or substituting its own judgment for the ALJ's. Accordingly, the Court finds no reversible error in the ALJ's assessment of Dr. Beardsley's opinion.

### 2. The ALJ's Assessment of the Plaintiff's Subjective Complaints

The Plaintiff also argues that the ALJ's assessment of Dr. Beardsley's opinion "affected the ALJ's assessment of [the Plaintiff's] subjective complaints." [Doc. 3 at 7]; see also [Doc. 6 at 2 ("The ALJ erred in using objective evidence—even as just one of the multiple factors—to discount Blizard's statement and the opinion of his oncologist.")]. Although the Plaintiff's memorandum and brief are not models of clarity, this argument about the ALJ's assessment of the Plaintiff's subjective complaints presents a separate issue from the ALJ's assessment of Dr. Beardsley's opinion. The 2017 changes to the Social Security regulations changed how the ALJ must view a medical opinion in light of objective medical evidence, but they did not change how the ALJ must view the Plaintiff's own subjective complaints.

In the Fourth Circuit, objective medical evidence is irrelevant to a claimant's subjective complaints about certain symptoms:

> ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence. Objective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia . . . . We also reiterate the long-standing law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms.

Arakas, 983 F.3d at 97–98.

The relevant circumstances in Arakas mirror those in the instant matter. In Arakas, the ALJ found that the claimant's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but the ALJ then proceeded to discredit the claimant's "statements about the severity, persistence, and limiting effects of her symptoms because [the ALJ] did not find them to be completely consistent with the objective evidence." Id. at 96 (internal quotation marks omitted). The Fourth Circuit found that the ALJ erred in discrediting the claimant's subjective complaints "by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence" when the claimant was instead "entitled to rely exclusively on subjective evidence to prove" the severity, persistence, and limiting effects of her symptoms. Id.

(internal quotation marks omitted); see also Ward v. Dudek, No. 22-1555, 2025 WL 1232629 (4th Cir. Apr. 29, 2025) (reiterating this principle from Arakas). The court noted that "subjective complaints of pain and fatigue," in particular, often lack support from the available objective medical evidence in a claimant's record. Id. at 95-96.

The ALJ here, like the ALJ in Arakas, initially found that the Plaintiff's "medically determinable impairments could have reasonably been expected to produce the alleged symptoms." [T. at 90]. However, after finding that the Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the objective medical and other evidence," the ALJ then discredited the Plaintiff's statements except "to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." [Id.]. For example, the ALJ noted that, despite the Plaintiff's complaints about "GI upset" and "remarkable fatigue," there were "no objective observations of these symptoms during treatment." [Id.]. This discrediting of the Plaintiff's subjective complaints repeats the error that the Fourth Circuit reversed in Arakas. Although ALJs must consider a medical opinion's consistency with objective medical evidence, see Drumgold, 144 F.4th at 606, they must *not* discount a claimant's subjective complaints based on their inconsistency with

Case 1:24-cv-00124-MR    Document 7    Filed 09/29/25    Page 16 of 17

the objective medical evidence, see Arakas, 983 F.3d at 96. As a result, although the ALJ properly assessed Dr. Beardsley's opinion, the ALJ improperly discredited the Plaintiff's subjective complaints.

Accordingly, because the ALJ did not apply the correct legal standard from Arakas when assessing the Plaintiff's subjective complaints of fatigue and GI upset, this matter must be remanded.

## VI. CONCLUSION

For the foregoing reasons, the Court will reverse the Commissioner's decision that the Plaintiff's disability has ended.

## **O R D E R**

**IT IS, THEREFORE, ORDERED** that, pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C § 405(g), the decision of the Commissioner is **REVERSED**, and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Signed: September 29, 2025

Martin Reidinger
Chief United States District Judge